**Odelia H. BLOSSMAN et al., Appellants,**

v.

**STATE of Texas et al., Appellees.**

**No. 702.**

Court of Civil Appeals of Texas, Corpus Christi.

June 22, 1972.

938

---

Horkin & Dorsey, Patrick J. Horkin, Jr., J. R. Keeling, Corpus Christi, for appellants.

C. Edwin Prichard, Jr., Asst. County Atty., Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a condemnation case. Suit was brought by the State of Texas and the County of Nueces against Odelia H. Blossman, et al, to acquire a 3.273 acre tract of land in Nueces County, Texas, hereinafter sometimes called the "Blossman tract", for highway purposes. It was stipulated that the only fact issue to be determined was the market value of the land that was taken by condemnation. The landowners waived their right to any claim for damages to the remainder of their land out of which the 3.273 acre tract was taken. After a jury trial, a judgment in favor of the landowners was entered on the jury finding that

the market value of the land which was condemned was $7,200.60. Odelia H. Blossman, et al, the landowners, have duly perfected their appeal from the judgment entered. We affirm.

The land that was taken is located immediately west of the unincorporated community of Violet and is about 2.8 miles east of the city limits of Robstown and about 3.1 miles west of the city limits of Corpus Christi. It is a "panhandle" shape tract of land, 82% of which fronts 539.87 feet on the south side of Highway 44. That portion fronting on the highway is 230 feet deep on the west side and about 200 feet deep on the east side. The remaining 18% is in the "panhandle" portion, about 417 feet in length and varying in depth from about 72 feet on the west to 51.51 feet on the east.

Appellants, by their first two points of error, complain of the trial court's refusal to admit the testimony of Mr. Bob Crow, an expert witness, relative to two sales, the "Ramon tract" and the "Cotton tract", as comparables to support his opinion as to the market value of the Blossman tract, the land acquired by condemnation. These points cannot be sustained.

It is undisputed that the Blossman tract was unimproved at the time it was taken. The "Ramon tract" was improved with a residence and the sale price thereof included the house and improvements. Our Supreme Court has held that sales of improved property are not admissible as comparables in determining the value of unimproved property. State v. Chavers, 454 S.W.2d 395 (Tex.1970).

Concerning the "Cotton tract", the record shows that it is in or very near the city limits of Robstown, some distance from the land involved in this appeal. "The general rule in such cases is that the question of the degree of similarity in the land involved in a claimed comparable sale, including the relative nearness of time and distance to the sale and land under consideration, is left largely to the discretion of the trial court".

**940**

State v. Childress, 331 S.W.2d 230 (Tex.Civ. App.—Eastland 1960, writ ref'd n. r. e.). The trial court did not abuse its discretion in excluding the testimony as regards the sale of the "Cotton tract".

The witness Crow did testify as to other sales, which he used as comparables to support his opinion as to the market value of the land in question. We have read the statements in the briefs of both parties and have examined the unchallenged representations made by the attorneys for both condemnors and condemnees relative to the "Ramon sale" and the "Cotton sale", and are of opinion that even if the matter of the testimony relating to the excluded sales was properly before this Court, reversible error would not be shown. Mr. Crow placed the value of the Blossman tract at a figure considerably higher than that found by the jury. The exclusion of such testimony as primary evidence of a comparable sale or as corroborative evidence of Crow's expert opinion of the market value of the condemned tract, was not of such nature as to be reasonably calculated to cause nor did it cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure. In addition, the statement of facts does not set out or show either of the two transactions, nor is there a bill of exception showing the substance of the excluded testimony. We cannot say that the trial court erred in excluding such testimony. Field v. Sosby, 226 S.W.2d 484 (Tex.Civ.App.—Waco 1950, writ ref'd); Appellate Procedure in Texas, § 9.8(3). Appellants' first and second points are overruled.

Appellants, in their point three, say that the trial court erred in admitting the testimony of appellees' witness, Mr. Ralph Cobb, as to his opinion of the market value of the condemned land on the date it was taken, for the reason that he was neither qualified as an expert witness nor as a lay witness with the knowledge of the condemned land necessary to support a market value opinion. We do not agree. It is

true that the witness Cobb did not make an appraisal of the condemned land, had no knowledge of the land at the date of its taking on December 9, 1968, and never saw the land until August 9, 1971, a few days before the trial. However, he testified that he was a real estate broker and had been actively engaged in the real estate business and field continuously since 1954. He performed services at various times for a number of clients who were interested in buying lands located in the general area of the land involved. Since 1954, he had been an active broker in the area between Corpus Christi and Robstown in the general area of Highway 44, selling over 500 acres in 13 parcels in that area. His real estate company had a sales value of $1,300,000.00 for the period January 1, 1971 to August 9, 1971, the date of trial. He further testified that from his experience as a real estate broker and particularly the experience he had had in the general area of the condemned tract that he had an opinion as to values of lands in that locale as of the date of its taking in December, 1968. Prior to trial he had actually visited the property that was taken by condemnation and was familiar with its layout.

The qualification of a witness to testify as to the market value of property is largely within the discretion of the trial court, and the appellate court should not disturb the action of the trial court in the absence of a clear abuse of that discretion. State v. Evans, 340 S.W.2d 99 (Tex.Civ. App.—Waco 1960, writ ref'd n. r. e.); Premier Petroleum Co. v. Box, 255 S.W.2d 298 (Tex.Civ.App.—Eastland 1953, writ ref'd n. r. e.). It is, however, essential that the expert witness have some acquaintance with the land and its market value at the time of trial. Hubbard v. Harris County Flood Control District, 286 S.W.2d 285 (Tex.Civ.App.—Galveston 1956, writ ref'd n. r. e.); Texas Pacific Coal & Oil Co. v. Taylor, 47 S.W.2d 1110 (Tex.Civ.App.— Eastland 1932, n. w. h.); Houston Lighting & Power Co. v. Daily, 291 S.W. 317 (Tex. Civ.App.—Galveston 1927, writ dism'd). "The rule undoubtedly is that, where it ap-

pears a witness' testimony is predicated upon both personal knowledge and upon hearsay, his testimony is admissible." Norris v. Lancaster, 280 S.W. 574 (Tex. Comm'n App.1926). When a witness testifies that he is acquainted with the market value of the real estate in that market, he is qualified to testify concerning such value. Natural Gas Pipeline Company of America v. Towler, 396 S.W.2d 917, 922 (Tex.Civ.App.—Corpus Christi 1965, n. w. h.); Texas Sanitation Co. v. Marek, 381 S.W.2d 710 (Tex.Civ.App.—Corpus Christi 1964, n. w. h.); State v. Newton, 391 S.W.2d 758 (Tex.Civ.App.—Waco 1965, n. w. h.). See Texas Land of Condemnation, § 126, pp. 400–402.

In this case, the witness Cobb was qualified to give his opinion as to market value of the Blossman tract. Appellants' criticisms of Mr. Cobb's qualifications go to the weight of his testimony rather than to its admissibility. Appellants' third point is overruled.

■ We next consider appellants' sixth point of error, wherein it is claimed that the verdict of the jury and the judgment rendered thereon are so contrary to the great weight and preponderance of the evidence as to be clearly wrong and unjust.

Appellants presented testimony of three witnesses concerning the market value of the 3.273 acre tract at the time of taking. Mr. Kilgore and Mr. Winship were lay witnesses, and Mr. Crow was an expert. Testimony as to the sales price of several tracts was received in evidence. One such sale involved a lot (the Kilgore lot) located about 450 feet east of the most northerly northeast corner of the 3.273 acre tract, fronting 50 feet on Highway 44 and 168.5 feet deep, containing .19 acres that was sold by Mr. Kilgore under a contract sale for $2,500.00. The terms of the contract were $30.00 down and $30.00 per month, bearing 7% interest. Other sales relied upon by appellants were sales of small tracts out of an 18.7 acre tract (the Tidwell tract) located about 1.5 miles west of the condemned tract.

These tracts fronted on Highway 44. The 18.7 acre tract fronted 1,000 feet on the highway and was over 800 feet deep; one of the small tracts, above mentioned, fronted 300 feet on the highway; each of the three other tracts fronted 100 feet on the highway; they varied in depth from about 600 feet to over 800 feet; the tracts contained 5.7, 1.9, 1.4 and 1.88 acres, respectively. Using a front foot basis, the tracts sold from $36.50 to $49.50 per front foot. Using an acreage basis, the lands sold from $1,900.00 to $2,934.00 per acre. Mr. Crow, after considering the above sales, placed a market value of $20,853.12 on the Blossman tract.

Appellees presented testimony of two witnesses, Mr. Cobb and Mr. Erickson, concerning the market value of the Blossman tract at the time in question. These witnesses also relied on the sales of the small tracts out of the "Tidwell tract" as comparables in determining market value of the condemned tract. It was pointed out that these sales were of lands that were long and narrow in dimensions, rectangular in shape, with the narrow side fronting on Highway 44. In their opinion, the sales price was properly based on an acreage basis. Mr. Erickson explained why he did not use the sale of the Kilgore 50 foot lot as a basis for his opinion on market value. Mr. Cobb testified that the market value of the land at the time it was taken was $6,500.-00; Mr. Erickson's opinion was that its market value at that time was $6,400.00.

The evidence in the record reasonably supports the market value of $7,200.60 as found by the jury. The jury verdict is for considerably less than the value placed on the land by appellants' witnesses, but is more than the value placed thereon by appellees' witnesses. All of the witnesses called were competent and qualified. The jury saw and heard each of them as they testified, and being the exclusive judge of their credibility and of the weight to be given their testimony, resolved the fact issue of the market value of the property. It is solely the function of the trier of facts to resolve

conflicts and contradictions in the evidence such as those presented by this appeal and we have no authority to usurp that function. State v. Meyer, 391 S.W.2d 471 (Tex.Civ.App.—Corpus Christi 1965, aff'd by Tex.Sup.Ct. in 403 S.W.2d 366); Housing Authority of City of Dallas v. Shambry, 252 S.W.2d 963 (Tex.Civ.App.—Austin 1952, writ ref'd n. r. e.). We find no reason to disturb the jury's finding. City of Corpus Christi v. Nemec, 404 S.W.2d 834, 839 (Tex.Civ.App.—Corpus Christi 1966, n. w. h.); Cannon v. State, 473 S.W.2d 325 (Tex.Civ.App.—Houston 1st 1971, n. w. h.).

After a review of the entire record, we are convinced that there is ample evidence of probative force to support the jury's finding with respect to market value of the 3.273 acre tract at the time it was taken. We hold that the verdict and the judgment rendered thereon are not against the overwhelming weight and preponderance of the evidence. Appellants' sixth point is overruled.

Prior to the beginning of the trial, the appellants filed certain admissions with the trial court wherein they waived the right to compensation for damages to the remainder of the land owned by them out of which the 3.273 acre tract was carved. Such admissions gave appellants the right to have the damages for the 3.273 acre tract determined by the jury without consideration or knowledge that the appellants owned other land contiguous with and adjacent to the tract that was condemned. State v. Meyer, 403 S.W.2d 366 (Tex.Sup.1966); State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194 (1936, opinion adopted). The trial court then granted appellants' motions in limine whereby counsel for appellees was instructed to make no reference at any time or stage of the trial to the fact that appellants owned land adjacent to the land that was being condemned, to refrain from asking any question referring to the remainder of appellants' land, and not to attempt to introduce any evidence of any kind or character that would indicate or suggest to the jury that there was such a remainder.

■ Appellants, by their fifth point, contend that the trial court erred in refusing to grant them a new trial because appellees' attorney, through cross-examination, conveyed to the jury information that was barred by the granting of their motions in limine. They say the word picture drawn by the questions and answers that are shown on two pages of the statement of facts "without a doubt implanted in the minds of the jury, the fact that this small tract, which had been farmed for many years, was not farmed or owned independently of a larger tract". We take issue with appellants on their position. One of their own witnesses (Kilgore) had already told the jury that the tract was very valuable as commercial property. Appellees' counsel, through questions and answers, brought out by Mr. Kilgore that (a) the land had been owned and farmed by appellants for many years, and (b) no use other than farming had been made of the land during the time that he had been acquainted with it. Such inquiries were proper. " . . . the particular purposes to which property is devoted, as well as others to which it is adapted, may be shown in evidence to enable the court and jury to determine its market value. . . . " State v. Carpenter, 89 S.W.2d 194 at 198. Moreover, appellants did not object to such questions being asked of Mr. Kilgore, nor did they move to strike either the questions or the answers. Appellants' fifth point is overruled.

Jury misconduct during deliberations is asserted by appellants in their fourth point. Three jurors, including the foreman, testified concerning the alleged misconduct. Mrs. Garza stated that a juror, early in the deliberation, commented that the appellants would have more frontage on the highway after it was widened, but that the foreman promptly told the jury that they could not consider that matter as it was not brought out in the evidence; she also stated that there was no further discussion of the

subject and that it did not enter into the jury's deliberation about the amount of money awarded by their verdict. Mrs. Baker said that a juror inquired as to whether appellants owned "the rest of the land", and said: "There would be more frontage afterwards than before"; she then stated the foreman said: "We cannot consider that. It is not in the testimony"; she further stated that the comment that was made did not influence her in her consideration of the amount of money that was awarded by the jury. Mr. Ard, the foreman, did not remember that any comment was made as to whether appellants would have more frontage on the highway after the taking than they had before; he testified "after examining the exhibits someone asked who owned the property behind the water line and someone else said they assumed it belonged to Mrs. Blossman, and I immediately told them not to discuss that because it was not brought out in the trial". He further testified that there was no further discussion of the subject and no mention was made thereof in the jury's deliberation as to the amount of money awarded by the verdict. The identity of the juror who made the comments was not disclosed.

The trial court found that the testimony as to exactly what was said during the deliberation by the jury was conflicting, but from the overall testimony of the three jurors who testified at the hearing on the motion for a new trial, that a juror, whose name was unknown, stated that *if* Mrs. Blossman owned the land located to the rear of the land that was being taken, she would have more frontage after the taking than before. The court found that upon the statement being made, the foreman of the jury immediately rebuked the juror, and told the jury that this matter was not brought out in evidence and should not be discussed or considered. The court also found that the statement was not a positive statement of fact but was a statement expressing deductive reasoning or opinion based upon a contingency. The court

further found that there was no overt act or jury misconduct. We approve the fact findings made by the trial court. Texas & P. Ry. Co. v. Aaron, 19 S.W.2d 930 (Tex. Civ.App.—Texarkana 1929, cert. denied, 281 U.S. 756, 50 Sup.Ct. 409, 74 L.Ed. 1166); Kittrell v. State, 382 S.W.2d 273 (Tex.Civ. App.—Dallas 1964, writ ref'd, n. r. e.); Nugent v. State, 287 S.W.2d 515 (Tex.Civ. App.—Austin 1956, n. w. h.).

 Whether a statement made by a juror in the course of jury deliberations amounts to misconduct is an issue of fact but whether such alleged misconduct resulted in injury to the complaining party is a question of law. City of San Antonio v. McKenzie Construction Co., 136 Tex. 315, 150 S.W.2d 989 (1941). Under Rules 327 and 434, T.R.C.P., the party complaining of jury misconduct must not only prove that an act of misconduct occurred and that it was material, but must also go further and show that probable harm resulted from such misconduct. Crawford v. Detering Co., 150 Tex. 140, 237 S.W.2d 615 (1951); City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259, 263 (1944); National Surety Corporation v. Moore, 386 S.W.2d 327 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.); St. Paul-Mercury Indemnity Co. v. Bearfield, 296 S.W.2d 956 (Tex.Civ.App. —Waco 1956, writ ref'd, n. r. e.).

 We have examined the entire record in this case, including the testimony of the three jurors who testified concerning alleged jury misconduct, and have reached the conclusion that appellants have not demonstrated to us that probable harm resulted to them from the alleged statements made in the jury room. They have not discharged the burden cast on them by Rules 327 and 434, T.R.C.P. In the absence of a showing that the juror's comment or statement affected the verdict, reversible error is not established. Putman v. Lazarus, 156 Tex. 154, 293 S.W.2d 493 (1956); Trousdale v. Texas & New Orleans Railroad Co., 154 Tex. 231, 276 S.W.2d 242

(1955); Kittrell v. State, supra; Garcia v. Home Indemnity Company, 474 S.W.2d 535 (Tex.Civ.App.—Amarillo 1971, n. w. h.).

The judgment of the trial court is affirmed.