GRAY 




IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-658-CV





THE STATE OF TEXAS,



 APPELLANT


vs.





JOSEPH KELLY GRAY, JOE F. GRAY, CHERRY K. GRAY,


JANEY GRAY TROWBRIDGE, AND JO ANN GRAY SMITH,



 APPELLEES




 




FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY



NO. 1728, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING



 





 The State appeals from a judgment of $944,883, rendered on a jury verdict in favor
of appellees, Joseph Kelly Gray, Joe F. Gray, Cherry K. Gray, Janey Gray Trowbridge, and Jo
Ann Gray Smith, in a statutory condemnation case. To obtain property for the widening and
conversion of U.S. Highway 183 in Austin into an elevated, controlled-access freeway, the State
condemned a strip of a commercial tract owned by appellees and imposed a control-of-access line
limiting access to their remainder property. The State contested the monetary damage award of
the special commissioners, causing this case to come to trial. In response to a discovery request,
the State admitted the market value of the property before condemnation, and trial was held on the single issue of the market value of the remainder property. The State
raises four points of error contending the trial court erred in two respects. First, the trial court
erred in admitting evidence of noncompensable elements of damage and in refusing to submit the
State's requested jury instruction on those elements. Second, the trial court erred in refusing the
State's request to withdraw or amend its answer to the request for admission, which effectively
prohibited the State from introducing any evidence contrary to its admission. We will affirm the
judgment.



BACKGROUND


 In preparing for trial, appellees served the State with a set of requests for admission
pursuant to Texas Rule of Civil Procedure 169. Request for admission No. 93 read: "The fair
market value of the property on the date of taking considering its highest and best use and
excluding any effects of the condemnation is $2,297,873.00." The State answered: "Admitted as
to fee simple title unencumbered by the existing lease agreement between the Condemnees." The
admitted figure was the State's own expert's appraisal value of the whole property. Appellees'
appraiser placed the value at $1,625,000.00.

 Almost three weeks before trial, appellees expressed their intention to rely on the
state's admission as to the value of the whole property. At a pretrial hearing four days before
trial, the State asked to be released from the effect of its admission, but did not tender a written
motion. The court refused the State's request to withdraw or modify its answer, thereby
prohibiting the State from introducing evidence contrary to the admission on the value of the
property as a whole. The State's first written motion to withdraw or amend its answer was
presented on September 23, 1993, the first day of trial; the State never moved for continuance or
attempted to withdraw its announcement of "ready."

 On the first day of the trial, outside the presence of the jury, the State also objected
to and moved to suppress any testimony relating to loss of visibility, diversion of traffic, circuity
of travel, or construction inconvenience to appellees' remainder property. These four factors have
been held to be noncompensable elements of damage under State v. Schmidt, 867 S.W.2d 769
(Tex. 1993) (hereafter "Schmidt factors"). (1) The court denied the motion to suppress, but granted
the State a running objection to the Schmidt factors provided that the State made a timely and
proper objection in the presence of the jury. (2)

 Testimony and exhibits regarding the Schmidt factors were nonetheless introduced. 
The first witness to testify was appellee Joseph Kelly Gray. On cross-examination, the State asked
Gray about the closing of exit ramps and driveways, and the relocation of utilities on the property
in question. The State also asked Gray about visibility, limited access, and traffic diversion
resulting from the construction of various controlled-access freeways in San Antonio, where Gray
lives.

 Appellees' next witness, Numa David, at the request of both parties, had prepared
a three-dimensional model of the immediate area around the condemned strip based on a map
drawn by the State's land planner. This model was introduced into evidence as State's Exhibit
1, and depicts the diversion of traffic and loss of visibility caused by the Highway 183
construction. David discussed the diversion of traffic without objection by the State. The State
raised its first and only objection as appellees laid the predicate for the introduction of a colored
schematic of the land planner's map by asking David if the map accurately depicted the location
of exit ramps around the site. Appellees pointed out that evidence of the Schmidt factors had
already been introduced, and the court overruled the objection. The State did not object to the
map when it was finally offered in evidence. Appellees called two more witnesses who discussed
at length several negative effects of the Schmidt factors on the value of the remainder property,
also without further objection by the State.

 At the close of the evidence, the State requested a charge instructing the jury not
to consider the Schmidt factors in determining the value of the remainder. The court refused to
include a Schmidt instruction in the charge. At the charge conference, the State did not object to
the court's denial of its proposed instruction regarding the Schmidt factors; it did, however, object
to the court's refusal to allow it to withdraw its admission regarding market value of the whole
property.



DISCUSSION


The Admission of Evidence on Noncompensable Elements of Damage

 In its first two points of error, the State contends that the trial court erred in
admitting evidence of the Schmidt factors and in refusing to submit the State's requested jury
instruction on these factors. Both parties agree that Schmidt factors are noncompensable damage
elements on which evidence is generally inadmissible in a condemnation case. As discussed
above, the trial court and appellees' counsel agreed to the State's request for a running objection
to testimony on the Schmidt factors after a timely and proper objection in front of the jury. The
first question is whether the State made such a timely and proper objection. We conclude that it
did not.

 A party must timely object to the admission of evidence in order to complain on
appeal. Tex. R. App. P. 52(a). In support of its argument that Schmidt-factor evidence was
improperly admitted, the State relies mainly on the case of State v. Priesmeyer, 867 S.W.2d 120
(Tex. App.--Austin 1993, no writ), in which this Court held that the State did not waive error with
respect to admission of evidence on the Schmidt factors. The instant cause is distinguishable
because the appellee in Priesmeyer did not contend that the State failed to object or that the State's
objection was insufficient to preserve error, but rather that the State waived complaint of the
Schmidt factors because it offered affirmative proof on the factors. Id. at 122. We held that
although the State offered evidence of Schmidt factors to counteract Priesmeyer's proof, it
preserved error because it timely and properly objected to the admissibility of evidence pertaining
to the factors. Id.

 The instant cause more closely resembles Morales v. Chrysler Realty Corp., 843
S.W.2d 275 (Tex. App.--Austin 1992, no writ), in which the State failed to timely and properly
object, and sponsored portions of the evidence relating to the Schmidt factors. We held that a
party must timely object to the admission of evidence in order to complain on appeal: "A party
on appeal should not be heard to complain of the admission of improper evidence offered by the
other side, when he, himself, introduced the same evidence or evidence of a similar character." 
Chrysler, 843 S.W.2d at 277 (quoting McInnes v. Yamaha Motor Corp., U.S.A., 673 S.W.2d
185, 188 (Tex. 1984)). The State made its first objection to the admission of testimony on the
Schmidt factors during David's testimony on the colored schematic drawing. At that point,
appellees had not introduced any evidence of the Schmidt factors. The State, however, had cross-examined Gray about several of the Schmidt factors and had failed to object to the admission of
David's three-dimensional model and his accompanying testimony about circuity of access. When
the State finally objected, the trial court properly overruled the objection on the grounds that
evidence on the Schmidt factors had already been admitted. Because the State failed to timely
object to the admission of evidence on the Schmidt factors, we hold that the trial court did not err
in admitting such evidence. The State's first point of error is overruled.

 As its second point of error, the State argues that the trial court erred in refusing
to instruct the jury to disregard the Schmidt factors. The State's proposed charge asked the jury
to answer two separate questions: (1) the market value of the strip of property taken, and (2) the
value of the remainder. The State requested an instruction to the jury not to consider circuity of
access, loss of visibility, construction inconvenience, and diversion of traffic, among other things,
in answering question number two. The court's actual charge omitted a Schmidt instruction and
merely asked the value of the remainder.

 The State did not submit separate and distinct requests for jury questions and
instructions, but instead presented an entire charge, complete with "boiler plate" language and a
juror's certificate. At the charge conference, the State did not make the trial court aware of any
extraordinary instructions in its proposed charge or raise any objection to the court's omission of
instructions on the Schmidt factors. See Department of Highways & Pub. Transp. v. Payne, 838
S.W.2d 235, 240 (Tex. 1992) (requiring a party to make the trial court timely and plainly aware
of the complaint and obtain a ruling to preserve error in a jury charge). Texas Rule of Civil
Procedure 274 provides: "A party objecting to a charge must point out distinctly the objectionable
matter and the grounds of the objection." This Court has held in a similar condemnation case that
the State's tendering of a proposed charge was not adequate to preserve error; the State must
preserve the error by objection. See State v. Munday Enters., 824 S.W.2d 643, 651 (Tex.
App.--Austin 1992), rev'd on other grounds, 868 S.W.2d 319 (Tex. 1994).

 Even if the State had made a proper objection at the charge conference, the trial
court would not have erred in overruling it. As set out above, the State did not properly preserve
error with respect to admission of evidence on the Schmidt factors. We held in Chrysler that the
trial court did not err in refusing the State's proffered instruction on the Schmidt factors because
the State itself had sponsored evidence of the factors and had failed to object to the landowner's
evidence on the factors. Chrysler, 843 S.W.2d at 277. Even though evidence on the Schmidt
factors is now generally inadmissible (such evidence was admissible at the time of the Chrysler
decision), the principle still holds that a trial court need not instruct the jury to disregard evidence
that the party itself introduced and sponsored or which was introduced without timely objection. 
We thus hold that the State did not preserve error, had there been such, in the jury charge. We
overrule the State's second point of error.



The Answer to Request for Admission No. 93

 Any matter admitted under Rule 169 is conclusively established as to the party
making the admission unless the admission is permitted to be withdrawn or amended. See Tex.
R. Civ. P. 169(2). Thus, when the State answered "admitted" to appellees' Request For
Admission No. 93, the issue of the value of the property as a whole was foreclosed, and no
evidence contradicting the State's answer was admissible. Marshall v. Vise, 767 S.W.2d 699, 700
(Tex. 1989). The State argues in its third and fourth points of error that the trial court erred in
refusing its request to withdraw or modify its answer and in prohibiting the State from introducing
evidence to "explain" this appraisal value, thereby inflating the jury award by some $419,000. (3) 
The State's expert appraised the value of the whole property at $2,297,883 and the remainder at
$2,246,300 and would subtract the latter figure from the former to reach a total compensation of
$51,583. Appellees' appraiser set the value of the whole at $1,625,000 and the value of the
remainder at $1,100,000 to arrive at a total compensation of $525,000. The State contends that
the proper total compensation for the jury to consider was thus a range between $51,583 and
$525,000. By disallowing the introduction of appellees' expert's figure for the value of the
whole, the State contends, the upper limit of compensation more than doubled.

 The State advances three main arguments in support of these points of error. First,
it argues that the appellees used Rule 169 as a "trap," and that manipulation of the rule prevented
the jury from hearing testimony and seeing exhibits which would have placed a lower value on
the property as a whole. See State v. Windham, 837 S.W.2d 73 (Tex. 1992). In Windham, the
condemnee asked that the market value of the taking be based on a larger parcel of land than the
taking itself. The trial court accepted Windham's argument that the taking and the additional
parcel were an inseparable "economic unit" for purposes of calculating market value. The
supreme court held that the condemnee could not unilaterally designate the economic unit on
which to base the appraisal, and that the jury must be permitted to consider competing evidence
of valuation supported by otherwise admissible expert testimony. Id. at 78.

 The State's reliance on Windham is misplaced. In Windham, the State made no
admission as to the value of any part of the property. In the instant cause, the appellees did not
unilaterally designate the size of the parcel on which fair market value was to be based or the fair
market value itself. Instead, the State admitted the value of the property as a whole based on its
own expert's appraisal. The appellees relied on this admission and informed the State's counsel
of their intention to do so at a hearing almost three weeks before trial. The State first asked to
withdraw the admission without written motion four days before the trial, and later presented a
written motion on the first day of trial. The trial court overruled the State's motion based on these
facts and failed to find that appellees had abused or manipulated Rule 169.

 Secondly, the State contends that the trial court abused its discretion in refusing the
State's request to withdraw or amend its motion because the State showed good cause for the
withdrawal, which would not have unduly prejudiced the appellees. See Tex. R. Civ. P. 169(2). 
A trial court's ruling on a motion to withdraw or modify an answer to a request for admission will
be set aside only upon a clear showing of an abuse of discretion. North River Ins. Co. v. Greene,
824 S.W.2d 697, 700-01 (Tex. App.--El Paso 1992, writ denied). We must determine whether
the court acted arbitrarily or unreasonably, i.e., without reference to any guiding rules or
principles. Downer v. Aquamarine Operators Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

 The State contends that it showed good cause for withdrawal because: (1)
appellees were required to supplement their discovery responses to reveal their intention to rely
on the State's admission; and (2) the admission precluded the State from meeting its burden of
proof on market value of the remainder. The State also argues that amendment or withdrawal
would not unduly prejudice appellees. The trial court weighed good cause and prejudice,
recognizing that appellees had completed discovery based on the admission and that the State first
presented its written motion to withdraw or amend on the first day of trial. The court noted that
the purpose of Texas Rule of Civil Procedure 169 is to simplify trials by removing undisputed
issues from the litigation, and that appellees had prepared for trial and deposed experts while
relying on the State's admitted valuation. The State cites no case in which an appellate court has
reversed a trial court's judgment because it refused to allow a party to withdraw or amend an
admission. We thus hold that the trial court did not act arbitrarily or unreasonably in refusing the
State's motion to withdraw or amend its written motion, and did not abuse its discretion in
refusing the motion.

 In its final argument, the State contends that it should be allowed to withdraw or
amend its admission because it prejudices the rights of the State in violation of section 402.004
of the Government Code. See Tex. Gov't Code Ann. § 402.004 (West 1990). The State did not
raise section 402.004 in support of its motion at the trial level, and has not shown how the
admission of its own expert's appraisal value prejudices its rights. This argument has no merit.

 Because the trial court did not abuse its discretion in overruling the State's motion
to withdraw or amend its answer to Request for Admission No. 93, we overrule the State's third
and fourth points of error.



Appellees' Cross-Point of Error

 Appellees argue in a single cross-point of error that this Court erred in denying
their motion to dismiss this appeal based on inadequate explanation within the State's motion to
extend time for filing the record. The State's motion for an extension of time to file the record
was timely filed and properly supported with affidavits and explanation. Appellees' cross-point
is overruled.



CONCLUSION


 We conclude that the State did not timely and properly object to the introduction
of evidence on noncompensable elements of damage, and that the trial court did not err in its
charge or in its refusal to allow the State to withdraw or amend its answer to appellees' request
for admission. We accordingly affirm the trial court's judgment.



 

 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: November 16, 1994

Do Not Publish
1.   In Schmidt, the Texas Supreme Court was presented with a factual situation much like
the one here. The State appealed from damage awards after it had condemned strips of land to
facilitate the expansion of Highway 183. The supreme court held that--absent a showing of
some special, unique injury--diversion of traffic, impairment of visibility, circuity of access,
and disruption of construction activities suffered by abutting landowners due to the elevation
of Highway 183 were community damages and therefore noncompensable under Texas
Property Code § 21.042(d). 867 S.W.2d at 781.
2.   The following exchange appears in the record:


MR. SAMPSON (counsel for the State):  I will . . . ask that a running
objection as to the other issues that I set out, or elements [Schmidt factors] be
permitted.

 

MR. MCCLISH (counsel for appellees):  I have no objection to all those other
elements, and agree to waive the contemporaneous objection rule with respect to
all evidence tendered after a timely and proper objection. I am not going to let
him off the hook of having to make an objection.


THE COURT:  Okay.

 

MR. SAMPSON:  I will make it once this time.


THE COURT:  You make one objection in front of the jury, and you can refer to
the discussion that we had before we went on the record--before the jury panel
came in.
3.   At trial, the State's expert described the methods and considerations involved in
arriving at his appraisal figure. By "explain" the State seems to mean it should have been
allowed to present evidence that the figure was just its appraiser's opinion and that others
may have reached a lower figure. Any such "explanation" would have necessarily
controverted the admission, in effect transforming it from one on the value of the
property as a whole to one on the appraisal of the value as a whole (i.e., from "We admit
that the value is X" to "We admit that our appraiser says the value is X"). The State's
interpretation of the admission changes the character of the admission to avoid the Rule 169
provision that admitted matters are conclusively established as to the party making the
admission.